THOMAS MADDOCK, Respondent, *v.* HENRY A. ROOT, Appellant.

*Action for goods delivered to a third person at the request of defendant — whether there was a promise, and if so, whether it was an original undertaking or a guaranty is a question for the jury — evidence.*

On the trial of an action brought to recover the value of goods manufactured by the plaintiff and delivered to a certain corporation, it was alleged on the part of the plaintiff that the goods were manufactured and delivered at the special instance and request of the defendant. This was denied by defendant, his contention being that he was an officer of such company, and in that capacity, as the plaintiff well knew, he ordered the goods of him. He denied having made any promise to personally pay for the goods, and insisted that the promise referred to in the plaintiff's testimony was a promise only to answer for a third

person, was not in writing and subscribed by him, and, therefore, was void under the Statute of Frauds. The defendant's denial of the promise was contradicted by the plaintiff and his son.

The account was kept in the name of the company on the plaintiff's books. It had been kept in that way when the plaintiff relied for payment for goods furnished to the corporation, upon the written guaranty of one Covington, and the form of keeping the account was not changed after the agreement with the defendant. The goods were to be delivered to the same party and place as before. Bills were rendered to the company at its place of business where the goods were also delivered to it by the direction of the defendant. No bill or account was ever presented to the defendant in which he was named as the debtor. There was never any dispute about the amount due to the plaintiff, the defendant having promised after the goods were delivered to pay or see that they were paid.

The plaintiff testified that when he first began to manufacture the goods he did so upon the written guaranty of Covington, who paid the bill for a time and then withdrew his guaranty. The plaintiff, having refused to furnish any more of the goods, was subsequently taken by a person who was styled the president of the company to the defendant, and there such conversation was had, if the plaintiff's version of it was true, as created an agreement by which the defendant became bound to pay for the goods to be delivered by the plaintiff to the company. This testimony was in some measure supported by letters written by the defendant to the plaintiff, and by the fact that the payments thereafter made were by means of the defendant's individual checks.

*Held*, that it was for the jury to say whether the defendant made any promise at all to pay the plaintiff, and if he did, whether his promise was an original undertaking to become solely responsible for such goods as the plaintiff should thereafter deliver to the company, or a promise intended and understood by the parties to be collateral to the principal contract, the company to be the principal debtor and the defendant a guarantor of performance on its part.

Upon the trial the court received in evidence, against the defendant's objection, a letter in the handwriting of a clerk of the defendant as follows :

"*Dec. 17th*, 1880.

"Dear Sir — Why don't you send me the report of how many machines you have in process of construction ? Please put in works at once 1,000 more generators.                    Yours truly,

"H. A. ROOT,

"Mr. Thomas Maddock.                    Per Connolly."

It had been made to appear, when the letter was received in evidence, that Connolly was, at the time of its writing, the defendant's clerk, accustomed to write letters by his direction, but that he had no recollection of special direction to write the letter in question. There were other letters in evidence containing orders in the defendant's handwriting and, by a subsequent letter in his own handwriting, which continued the correspondence upon the lines of the letter of December seventeenth, the defendant appeared to have recognized the letter in question.

*Held,* that the letter of December seventeenth was properly received in evidence;

That the evidence that it was written by the defendant's directions was sufficiently convincing to make it necessary for the defendant to show that it was not his act, if such was the fact.

The court excluded the answer to an interrogatory which was "If your answer to the last interrogatory should be yea, state where said company did business; whether it was organized as a corporation, and if so, under the laws of what State."

Prior to the reading of the interrogatory, the location of the company's business had been established by proof. The objection taken was that it was not a proper method of proving the organization of the company.

*Held,* that the court properly excluded the answer to the interrogatory, as the fact of incorporation, when material and not merely collateral, cannot be proved by parol testimony;

That if the answer to the question had been that it was not a corporation, but a voluntary association, such an answer would not have been responsive.

APPEAL by the defendant, Henry A. Root, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 15th day of December, 1892, upon the verdict of a jury at the New York Circuit, and also from an order entered in the office of the clerk of the city and county of New York on the 16th day of December, 1892, denying the defendant's motion for a new trial.

This action was brought to recover the value of certain ozone generators alleged to have been manufactured by the plaintiff at the special instance and request of the defendant, and delivered by his direction to the United States Ozone Company.

*Hatch & Wickes,* for the appellant.

*Albert H. Atterbury,* for the respondent.

PARKER, J.:

The judgment under review awards to the plaintiff the value of ozone generators, which it is alleged he manufactured at the special instance and request of defendant, and delivered by his direction to the "United States Ozone Company." Defendant does not dispute that plaintiff manufactured the goods, and delivered them to the "Ozone company," or that they were not in number or of the value averred in the complaint, but he did deny, both by his plead-

ing and his deposition read on the trial, that the goods were purchased by him individually, his contention being that he was an officer of the " United States Ozone Company," and in that capacity, as the plaintiff well knew, ordered the generators of the plaintiff. While he denied making any promise whatever to personally pay for the goods, he insisted that the promise which the testimony on the part of the plaintiff tended to prove, was a promise to answer for the debt of a third party, not in writing and subscribed by him, and, therefore, void because in contravention of the "Statute of Frauds."

· But the evidence was not of such a character as to have warranted the court in dismissing the complaint at the close of plaintiff's case, or after the testimony was all in, on either ground.

Defendant's denial of a promise to pay plaintiff was contradicted by the plaintiff and his son ; therefore, as to it, a question of fact was presented.

Nor could it properly have been determined as a matter of law, that the promise alleged to have been made was in violation of the statute.

There were circumstances tending to show that the plaintiff regarded the " United States Ozone Company " as the principal debtor.

(1) The account was kept in the name of the " Ozone company " on plaintiff's books.

(2) Bills were rendered to the " Ozone company " at their place of business, where the goods were also delivered.

(3) No bill or account was ever presented to " Root " in which he was named as the debtor.

On the other hand, plaintiff testified that when he first began to manufacture the generators, he did so upon the written guaranty of one " Covington," who paid the bills for a time and then withdrew his guaranty.

Plaintiff having refused to furnish any more goods, he was subsequently taken by a person who was styled the president of the " United States Ozone Company," to the defendant, and there such conversation was had, if plaintiff's version of it be true, as created an agreement by which defendant became bound to pay for generators to be delivered by the plaintiff to the company.

This testimony has some measure of support in letters, subsequently written by Root to the plaintiff, and also from the fact that the payments thereafter made were by means of Root's individual checks.

As to the circumstance of keeping the account in the name of the company, instead of Root's, it is urged by way of explanation that plaintiff kept the account in the name of the company when relying for payment upon the written guaranty of Covington, and the form of keeping the account was not changed after the agreement with Root, as the goods were to be delivered to the same party and place as before.

There seems to be no explanation of plaintiff's having rendered his bills to the company, other than that Root directed him to deliver the goods to it, and have bills made out and sent to correspond.

The reason assigned for not sending the bills to the defendant, in which he was personally charged as the debtor, is that there was never any dispute about the amount due to the plaintiff, defendant having promised, after the goods were all delivered, to pay or see that it should be paid.

From the brief reference to the evidence which we have made, it is apparent that it was for the jury to say :

*First.* Whether defendant made any promise at all to pay the plaintiff.

*Second.* If he did, whether his promise was an original undertaking to become solely responsible for such goods as the plaintiff should thereafter deliver to the company, or a promise intended and understood by the parties to be collateral to the principal contract — the company to be the principal debtor — and the defendant a guarantor of performance on its part.

These questions were clearly submitted to the jury, in a charge to which no exception was taken.

There remains, therefore, for further consideration, only the exceptions taken to the rulings of the court in the admission or rejection of evidence.

We shall discuss the questions presented by two of them.

Against the defendant's objection the court received in evidence the following letter in the handwriting of " Connolly," a clerk of defendant :

" *Dec.* 17*th*, 1880.

" DEAR SIR — Why don't you send me the report of how many machines you have in process of construction? Please put in works at once 1,000 more generators.

" Yours truly,

" H. A. ROOT,

" Mr. THOMAS MADDOCK. Per CONNOLLY."

When received it had been made to appear that Connolly was, at the time of its writing, Root's clerk, accustomed to write letters by his direction, but had no recollection of special direction to write this letter.

Defendant complains that by it there was placed before the jury as a fact that defendant made orders on his own account, and not as treasurer of the " Ozone company." There were other letters containing orders confessedly in the handwriting of Root, signed by him individually, and so it is not likely that the result was affected by its admission.

But it was not error to admit it. In addition to the fact to which Connolly testified, that he had been for a number of years, and was at the date of the letter, in Root's employ, and accustomed to write letters by his direction, there were other circumstances, to one of which we shall allude, which, considered in connection with the direct proof of authority, was sufficient to establish *prima facie* that the letter was sent by the direction of defendant.

The defendant appears to have recognized the letter by a subsequent one in his own handwriting, which continues the correspondence upon the lines of the letter of December seventeenth. That letter, as we have observed, asked for a report of the number of machines in process of manufacture. Apparently it was replied to, for the day following defendant sends a letter, in his own handwriting, in which he says : " I am in receipt of your favor of yesterday. You are increasing the number it is true, but not sufficiently. From your letter it seems that there are about 500 now making. We want all told 1,000 as soon as possible."

The evidence that the letter of the seventeenth was written by defendant's direction was sufficiently convincing to make it necessary for the defendant to show that it was not his act, if such was the fact.

At that stage of the proceeding the occasion was presented for him to inform the court that it was his purpose to make it appear that the letter was not written by his direction. Had this been done, the opportunity would doubtless have been afforded him to challenge the proofs presented by the plaintiff on that subject, before the admission of the letter in evidence.

He elected to stand on the insufficiency of plaintiff's proof and without possible injury to his defense unless he could have proven that the letter was not sent by his direction.

The court excluded the answer to the fourth interrogatory, which was: "If your answer to the last interrogatory should be yea, state where said company did business; whether it was organized as a corporation, and if so, under the laws of what State."

No injustice was done the defendant by excluding the answer to so much of the interrogatory as called for the location of the company's place of business, for that had been established prior to the reading of the interrogatory.

The only part of it which could possibly be of moment was the inquiry whether organized as a corporation, and if so, in what State.

Appellant now contends that the question calls for something more than proof of incorporation; that it may well have been that the answer was that it was not a corporation, but a voluntary association, doing business under the name of the "United States Ozone Company."

As we have not the answer before us, we cannot tell whether, by its exclusion, testimony tending to show a voluntary association was rejected.

Such an answer would not have been responsive to the question, which inquired whether it was organized as a corporation (not whether it was a voluntary association).

On the trial defendant's counsel, as well as the court, apparently understood that the defendant was attempting to prove incorporation, for the objection taken was that it was not a proper method of proving the organization of the company. The court having indicated an intention to sustain the objection, defendant's counsel said: "The organization of a company is proved in that way every day in court."

The question which the court passed upon, and which counsel for

both parties assumed was the only question before the court, was, whether the fact of incorporation, when material and not merely collateral, can be proved by parol testimony.

The court rightly held it could not be.

The judgment should be affirmed, with costs.

O'Brien and Follett, JJ., concurred.

Judgment affirmed, with costs.